No. 4267

Second Circuit

BECKMAN CO. v. DEBLIEUX

(March 16, 1932. Opinion and Decree.)

Rusca & Cunningham, of Natchitoches, attorneys for plaintiff, appellant.

M. L. Dismukes, of Natchitoches, attorney for defendant, appellee.

DREW, J. Plaintiff sued for $110, the alleged price of 2,000 "Toy Talkies," which it claims to have sold and delivered to defendant.

The defense is a general denial, and defendant denies that the order was author-

ized by him or by any one with authority to order the merchandise. The lower court rejected the demands of plaintiff, and it has prosecuted this appeal.

Defendant operates a drug store in the town of Natchitoches, and he and Joe Maggio opened up a business in the name of "Demon's Den," in that part of town near the State Normal School. This business handled cigars, confections, cigarettes, etc., and specially catered to the students of the Normal School. They employed one "Jones" to look after Demon's Den, whose authority consisted of managing the clerks and buying such articles as were needed from day to day, such as gum, etc., all of which was paid for with cash, and he was without authority to sign orders for other goods.

Plaintiff's salesman approached defendant about buying some advertising matter for Demon's Den and exhibited his samples to defendant. Defendant picked out two numbers, a cap and a "toy talkie," and instructed the salesman to go to Demon's Den and show these two numbers to Mr. Jones and Mr. Maggio and let them decide which was most acceptable, and to come back and he would sign or ratify the order. The salesman went to Demon's Den and showed the samples to Mr. Jones, who selected the "toy talkie" and signed the order for 2,000 at 5½ cents each. The order was signed, "Demon's Den, by O. O. Jones."

The order, signed as above described, was sent by the salesman to plaintiff, who printed the Demon's Den advertising on the backs and shipped them by express. The express man delivered the goods to Demon's Den and later presented a bill for express charges of $5 and some cents, which was paid.

The invoice followed a few weeks later and was delivered to defendant's drug store. Soon thereafter, defendant wrote plaintiff denying the authority of Jones to buy the goods for Demon's Den, and also complained of the quantity and price. He offered to return the goods, which offer was refused by plaintiff.

There is no apparent dispute over the facts as above narrated, but there is a dispute over the authority of Jones to place the order and the ratification of same by the defendant. Defendant testified that he told the salesman to let Jones see the samples and select what he thought best, but specifically told him that any order would have to be signed by either defendant or Mr. Maggio. This is not denied by the salesman, who contends that Mr. Jones informed him that he was a partner in the business, and that he was therefore satisfied with Mr. Jones' signature to the order. He contends that he returned to defendant's drug store in company with Mr. Jones and informed defendant that Mr. Jones had ordered the 2,000 talkies, and that defendant replied, "O. K.," and that he left a copy of the order with defendant before he returned to Demon's Den.

Mr. Jones testified that he informed the salesman that he had no authority to sign the order and that he signed it only for the purpose of showing to defendant that he had made a selection and that he did not get out of his car when he took the salesman from Demon's Den to defendant's drug store; that he merely delivered him there and went on his way, and knew nothing of what transpired afterwards between the salesman and defendant.

The defendant testified in part as follows:

"Q. When he got back to the store, after he had seen Jones I believe you state that Jones came with him, did you see the order then?

"A. No, sir.

"Q. Did you know how many had been ordered?

"A. No, sir.

"Q. Did you know at what price?

"A. No, sir.

"Q. Did he show you the order and require you to sign it?

"A. No, sir, he didn't suggest my signing it.

"Q. Did you know at the time whether or not Mr. Jones had actually ordered any talkies?

"A. No, sir, I knew he had selected some, I was probably busy at the time.

"Q. Then it was not an order from the Demon's Den, unless it was signed by you or Mr. Maggio?

"A. Yes, sir."

We quote the above testimony for the reason that counsel for plaintiff in his brief contends that defendant did not deny seeing the order and receiving a copy of it. It is clear from the above testimony that defendant absolutely denies ever ratifying the order signed by Jones.

Jones was not a partner in the business, and was without authority to order goods or merchandise for the business. The salesman admits that defendant told him that any order would have to be signed by defendant and he returned to defendant's place of business after showing the samples to Jones. It therefore follows that, for plaintiff to recover, he must by a preponderance of the testimony show that the order was signed or at least ratified by the defendant.

The lower court did not find the preponderance of testimony to be so, and we do not feel justified in saying there is manifest error in his finding.

Plaintiff's salesman is contradicted by Mr. Jones and also by defendant, and his own testimony is uncorroborated.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.